# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-2251

———————

|  |  |  |
|---|---|---|
| Michele LaCroix, | * | |
| | * | Appeal from the United States |
| Appellant, | * | District Court for the District |
| | * | of Minnesota. |
| vs. | * | |
| | * | |
| Sears, Roebuck, and Co., | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: December 15, 2000
Filed: February 14, 2001

———————

Before LOKEN and MAGILL, Circuit Judges, and BATTEY,[1] District Judge.

———————

BATTEY, District Judge.

Michele LaCroix (LaCroix) appeals from the order of the district court,[2] granting summary judgment in favor of appellee, Sears, Roebuck & Co. (Sears), denying her

———————

[1]The Honorable Richard H. Battey, United States Senior District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

retaliation and discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Minnesota Human Rights Act. We affirm.

## FACTS

LaCroix worked for Sears from 1974 until 1998. At the time of her resignation, LaCroix was a human resource specialist for the Sears' Eden Prairie facility in Minnesota. In the early 1990s, LaCroix became aware of allegations that her supervisors, Mark Fuller (Fuller) and Charles Riddle (Riddle), were engaging in sexually harassing behavior with several of the Eden Prairie female employees. At one point, employee Nancy Lindholm informed LaCroix that Fuller was coercing Lindholm into engaging in a sexual relationship with him. Other female employees also recounted unwanted sexual advances to LaCroix. Sometime in December 1995, LaCroix began reporting this behavior to Sears supervisors, managers, and human resource representatives.

According to LaCroix, Sears made little effort to curtail the inappropriate behavior. To the contrary, LaCroix alleges that soon after reporting the sexual harassment, she became the subject of retaliation in the form of a negative performance review, a memorandum of deficiency, and an eventual demotion. In addition, LaCroix contends that her immediate supervisor, William Dziurawiec (Dziurawiec), refused to speak to her and intentionally withheld the dates and times of mandatory employment meetings. LaCroix also complains that she was denied training, promotional opportunities, and employee assistance because she is female.

On August 28, 1997, manager Cay Gliebe (Gliebe) and Dziurawiec informed LaCroix that her current position at Sears was being eliminated, and that Sears had upgraded the job requirements for the area human resource manager position to require a college degree that LaCroix did not possess. On October 31, 1997, LaCroix took a medical leave of absence. She remained on leave until August 18, 1998, when she left her employment with Sears.

**DISCUSSION**

The district court granted Sears' motion for summary judgment on all claims presented. On appeal, LaCroix contends that the district court erred in concluding that she had failed to establish a prima facie case of retaliation and gender discrimination.

We review the district court's decision to grant summary judgment de novo. See Fed. R. Civ. P. 56(c). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists. See id. The movant bears the burden of proving that the facts are undisputed. See Enterprise Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996). Recognizing that proof of discrimination often depends upon inferences rather than direct evidence, our review of the record in this case nonetheless satisfies us that the district court's ruling was proper.

**Retaliation**

LaCroix contends that the district court erred in finding that she had failed to present a prima facie case of retaliation. Title VII makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, LaCroix must show: (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection between the two events. See Montandon v. Farmland Industries, Inc., 116 F.3d 355, 359 (8th Cir. 1997). The same standards apply to MHRA retaliation claims. See Cross v. Cleaver, 142 F.3d 1059, 1076 (8th Cir. 1998). Not everything that makes an employee unhappy is an actionable adverse employment action. See

Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998). Rather, an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities. See Williams v. City of Kansas City, MO, 223 F.3d 749, 753 (8th Cir. 2000) (citing Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999)).

In this case, the district court examined each of the alleged acts of retaliation, and concluded LaCroix had failed to show that they were causally related to her reports of sexual harassment. The district court also determined that the alleged actions were not sufficiently adverse within the meaning of Title VII to establish a prima facie case of retaliation. We agree.

LaCroix claims that she was given a negative performance review in June 1997, only a few hours after she made her report of harassment and discrimination to a Sears attorney. She contends that the negative review was given in retaliation for this report. This claim is unsupported by the record.

In an attempt to establish a nexus between the alleged conversation with a Sears attorney and her performance review, LaCroix cites to a note she wrote dated June 6, 1997, in which she states that she will be contacted by an attorney for Sears. Close scrutiny of the record reveals, however, that the performance evaluation was actually given to her before she talked to the Sears attorney. In fact, LaCroix testified that she spoke to an attorney for Sears on or about June 17, 1997, while the record shows that she wrote a response letter to her supervisor regarding her negative performance evaluation on June 12, 1997, at least five days before she spoke with the Sears attorney. Without more than LaCroix's conclusory allegations that she actually engaged in a statutorily protected activity *before* the allegedly adverse action, this allegation of retaliation must fail. See Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion); Helfter v.

United Parcel Service, Inc., 115 F.3d 613, 616 (8th Cir. 1997) (holding conclusory statements, standing alone, are insufficient to withstand properly supported motion for summary judgment).

Nevertheless, even assuming the existence of a causal nexus between the June 1997 performance review and LaCroix's reports to the Sears attorney, we agree with the district court that she has failed to show that the performance review was sufficiently adverse. See Williams, 223 F.3d at 753. While LaCroix declares that the review was "negative," the evaluation demonstrates that her overall average score was 2.8. According to the performance review's internal rating guide, an overall score of 2.8 translates to "consistently meets expectations." Because a score of "consistently meets expectations" is not inherently "negative," it cannot constitute an adverse employment action. See Montandon, 116 F.3d at 359.

Finally, we also agree LaCroix has failed to demonstrate how the review resulted in a material employment disadvantage. See Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th Cir. 1999) (observing that a negative performance review does not in itself constitute an adverse employment action, as it has no tangible effect upon the recipient's employment); Spears v. Missouri Dep't. of Corrections & Human Resources, 210 F.3d 850, 854 (8th Cir. 2000) (holding a negative review is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment) (citing Enowmbitang v. Seagate Tech., Inc., 148 F.3d 970, 973-74 (8th Cir. 1998)).

LaCroix next identifies Dziurawiec's refusal to speak to her, and his failure to inform her of mandatory meetings as examples of retaliation. She argues his behavior constitutes an adverse employment action because her unsatisfactory attendance was later used, at least in part, as a basis for giving her another poor performance review. Even assuming that Dziurawiec's refusal to include LaCroix in mandatory meetings was used as a basis for a subsequent negative performance review, this alone, does not

establish an adverse employment action. As we have already noted, a negative review is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. See Spears, 210 F.3d at 854.

The next instance of retaliation alleged by LaCroix is based upon a memorandum of deficiency she received on October 27, 1997. LaCroix argues the memorandum was given to her in retaliation after her attorney notified Sears of her intent to name Sears in a harassment and discrimination suit. In rejecting this claim, the district court observed that LaCroix had failed to establish that the memorandum of deficiency was an adverse employment action. We agree.

There is no evidence in the record that the memorandum of deficiency ever resulted in a material employment disadvantage. See Cossette, 188 F.3d at 972. In fact, the record reveals that almost immediately after receiving the memorandum of deficiency, LaCroix took a medical leave of absence from which she would not return. Additionally, LaCroix's claim that the memorandum of deficiency was somehow used as grounds to reduce her pay and threaten her with termination is simply unfounded. In support of this claim, LaCroix cites to pages 292-93 of the record in which her deposition testimony appears. Our review of the record at this point, however, reveals that she received word of her pending demotion sometime in September 1997, several months *before* she was given the memorandum of deficiency. The record at this point also fails to support her claim that the memorandum of deficiency was used as a basis to threaten her with termination. In short, LaCroix has failed to show that the memorandum of deficiency was sufficiently adverse to establish a prima facie case of retaliation.

LaCroix next alleges that the elimination of her position as a human resource specialist was in retaliation for her reports of sexual harassment. This claim also finds little support in the record.

While Sears did inform LaCroix that her position was eventually going to be eliminated due to a nationwide restructuring program, LaCroix remained in her job as a human resource specialist until she took medical leave. Nothing in her job duties, grade, pay, benefits, or title was actually ever changed. Furthermore, LaCroix was offered a new position upon the elimination of her job, and while the new position was a lower grade, there is no evidence in the record, beyond LaCroix's own assertions, that she was to be give a reduction in pay. Without more than LaCroix's own testimony as to her belief that she was to receive a pay cut, this claim of retaliation must fail. See Helfter, 115 F.3d at 616; see also McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 511-12 (8th Cir. 1995) (observing that employers have wide latitude to make business decisions including the right to change an employee's duties).

Finally, LaCroix alleges that she was denied necessary training and promotions in retaliation for her protected activities. Like many of her previous allegations, however, these claims are also unsupported by the record. See id. As the district court correctly observed, the record is devoid of any evidence that LaCroix ever asked for or was denied training opportunities. While LaCroix was not promoted to the new position of area human resource manager created in response to Sears' nationwide restructuring plan, the record supports Sears' position that LaCroix was denied the promotion because she lacked the four-year college degree required by the position. Nationally, three women and one man were hired to fill the position of area human resource manager during Sears' restructuring, and each had a four-year college degree. LaCroix has come forward with no evidence to establish that this motive was pretextual. See Scott v. County of Ramsey, 180 F.3d 913, 916 (8th Cir. 1999) (observing that once the defendant has advanced a legitimate reason for its actions, the burden shifts to the plaintiff to present evidence of pretext) (citing Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997)). Because LaCroix's allegation that she was denied training and promotions are supported only by LaCroix's conclusory statement,it too must fail. See Stanback, 180 F.3d at 909; Helfter, 115 F.3d at 616.

**Discrimination**

LaCroix next contends that the district court erred in granting summary judgment as to her discrimination claim. Because LaCroix's claim is based on indirect evidence of discrimination, the familiar <u>McDonnell Douglas</u> burden-shifting analysis applies. <u>See</u> <u>Breeding v. Arthur J. Gallagher & Co.</u>, 164 F.3d 1151, 1156 (8th Cir. 1999) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). To establish a prima facie case of sex discrimination, LaCroix must demonstrate she: (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated persons of the opposite sex. <u>See</u> <u>id.</u> at 1156.

In this case, it appears to be undisputed that LaCroix is a member of a protected class and that she was qualified to perform her job. The question is whether she has shown any adverse employment action and that similarly-situated males were treated differently.

In support of her discrimination claim, LaCroix incorporates by reference the allegedly adverse incidents already described in her retaliation charge. She also alleges that the male supervisor of the technical section at the Eden Prairie facility was given an additional assistant because he is male, while LaCroix was denied an assistant because she is female. Finally, she asserts that she was denied a telephone answering system, and other requested equipment, that would have made her job easier.

As we have previously discussed, LaCroix has failed to present evidence from which a reasonable jury could find that any of the allegedly retaliatory acts were sufficiently adverse. Because this conclusion also applies to LaCroix's claims of discrimination, she has failed to present a prima facie case under Title VII in this

regard. Even if we assume for the purposes of our review that LaCroix established the requisite level of adverseness, we agree with the district court that there is nothing in the record which would support LaCroix's claim that she was treated any differently than similarly situated males. While she does allege that Jim Osbeck was given an extra employee while she was not, Osbeck worked in an entirely different department and had a different position with Sears and therefore was not "similarly situated" to LaCroix in all relevant respects. See Breeding, 164 F.3d at 1156. Finally, we note that the record is completely devoid of any evidence that LaCroix was ever denied requested equipment or that similarly situated males were provided such equipment. See id. Since LaCroix bears the initial burden of establishing a prima facie case of discrimination, see Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1339 (8th Cir. 1996) (citing Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L. Ed. 2d 207 (1981)), the district court did not err in granting Sears' motion for summary judgment as to this claim.

## CONCLUSION

For the foregoing reasons, the decision below is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.