**Barbara J. ROSE, Plaintiff,**

v.

**BUCKEYE TELESYSTEM, INC., et al., Defendants.**

**No. 3:00 CV 7530.**

United States District Court, N.D. Ohio, Western Division.

Dec. 4, 2001.

Beth M. Rivers, Pitt, Dowty, McGehee & Mirer, Royal Oak, MI, Bonnie R. Rankin, Rankin & Sharkey, Michelle L. Kranz, Zoll & Kranz, Toledo, OH, for Plaintiff.

Fritz Byers, Margaret Mattimoe Sturgeon, Eastman & Smith, Robert J. Gilmer, Jr., Eastman & Smith, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

Plaintiff Barbara J. Rose brings this action against Defendants Buckeye Teles-

ystem, Inc. ("Buckeye") and Block Communications claiming she was discriminated against on the basis of age and sex. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Pending is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the following reasons, defendants' motion shall be granted.

## BACKGROUND

In August, 1998, plaintiff began employment with Buckeye as an Account Executive. Plaintiff's complaint alleges several incidents. In August, 1999, plaintiff complained to her manager, John Martin, alleging that male account executives stole accounts from her. In November, 1999, defendant offered an Account Specialist position to plaintiff. Plaintiff rejected this position on December 1, 1999, alleging the position was a demotion.

In January, 2000, defendant announced a new commission program which eliminated the base salary of the account executive positions. Following a meeting to discuss the program, Buckeye disciplined plaintiff for making a negative comment during the meeting.

On February 7, 2000, Buckeye suspended plaintiff for a negative attitude. When she returned to work, plaintiff was told to move her work space to another cubicle.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

Plaintiff claims that defendants subjected her to unlawful discrimination based on

age and sex under the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and Title VII, 42 U.S.C. § 2000e–2(a)(1).

Section 623 provides that an employer may not discriminate under the ADEA on the basis of age:

(a) Employer practices. It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this Act.

Title VII provides, "It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."

A plaintiff's prima facie case under Title VII[1] and the ADEA essentially is the same. To establish a prima facie case of age discrimination, a plaintiff must prove: "(1) [plaintiff] was at least 40 years old at the time of the alleged discrimination; (2) [plaintiff] was subjected to an adverse employment action; (3) [plaintiff] was otherwise qualified for the position; and (4) after [plaintiff] was rejected, a substantially younger applicant was selected." *Bur-*

*zynski v. Cohen,* 264 F.3d 611, 622 (6th Cir.2001) (citing *Barnett v. Dep't of Veterans Affairs,* 153 F.3d 338, 341 (6th Cir. 1998)).

To demonstrate a prima facie case of sex discrimination, the plaintiff must prove: "(1) [plaintiff] is a member of a protected class, (2) [plaintiff] was subjected to an adverse employment action, (3) [plaintiff] was qualified, and (4) [plaintiff] was treated differently than similarly-situated male employees for the same or similar conduct." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 928 (6th Cir.1999) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992)).

Defendants argue that plaintiff cannot establish her prima facie case for either the ADEA or the Title VII claim. Defendants argue that plaintiff: 1) offered no evidence that she suffered an adverse employment action; 2) did not establish, under the ADEA framework, that she was replaced by a substantially younger person; 3) did not offer, under Title VII, evidence that she was treated differently than similarly-situated employees; and 4) failed to demonstrate that age or sex was a motivating factor in an employment decision. Because I find that plaintiff cannot prove that she suffered an adverse employment action and, therefore, cannot prove her prima facie case under Title VII or the ADEA, I decline to address defendants' remaining arguments.

## I. Adverse Employment Action

Plaintiff alleges that she suffered adverse employment action because she was disciplined, forced to accept a demotion, and constructively discharged. Defendants argue that plaintiff's allegations do

---

1. A plaintiff may prove a Title VII case through direct or indirect evidence. Plaintiff does not attempt to demonstrate direct evi-

dence of discrimination in this case. This case will, thus, be examined under the indirect evidence framework.

not constitute adverse employment actions. Defendants also argue that plaintiff cannot establish that she was constructively discharged.

An adverse employment action is a "materially adverse change in the terms and conditions of ... employment." *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 662 (6th Cir.1999). In *Hollins,* the Sixth Circuit stated,

> [T]he Seventh Circuit explained the requirements for establishing a materially adverse employment action in the context of an age discrimination case:
>
> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (citing *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)); *see also Black v. Columbus Pub. Schools,* 124 F.Supp.2d 550, 565 (S.D.Ohio 2000) ("The United States Supreme Court has defined an adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as well as the denial of a raise or promotion.'") (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

## A. Discipline

Plaintiff claims that she suffered an adverse employment action because she allegedly was warned and suspended for making negative comments about Buckeye and was removed from accounts after customer complaints. Defendants argue that an oral reminder, a written warning, and a one-day suspension with pay do not constitute adverse employment actions.

▮ Discipline can constitute an adverse employment action if it is a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins,* 188 F.3d at 662. For example, discipline constitutes an adverse employment action when it involves suspension from work for several days or when the suspension is without pay. *See e.g., Russell v. Board of Trs. of the Univ. of Ill.,* 243 F.3d 336, 341 (7th Cir.2001) (suspension for five days without pay was an adverse employment action); *Biolchini v. General Elec. Co.,* 167 F.3d 1151, 1154 (7th Cir.1999) (one-week disciplinary suspension was a materially adverse employment action); *Silk v. City of Chicago,* 194 F.3d 788, 800 (7th Cir.1999) (five-day disciplinary suspension was materially adverse).

Discipline also can be an adverse employment action when disciplinary write-ups affect an employee's opportunity for promotion and pay raises, and may place an employee on probation. *See e.g., Cunningham v. Kansas City Star Co.,* 995 F.Supp. 1010, 1025 (W.D.Mo.1998) ("There is sufficient evidence in the record to support the finding that disciplinary 'write-ups' adversely affected plaintiffs' working conditions in that write-ups affected plaintiffs' opportunities for promotions."); *Duran v. N.M. Dep't of Labor,* 143 F.Supp.2d 1278, 1285 (D.N.M.2001) ("There is no evidence that the warning letter or inability to attend the Governor's Conference ... affected Plaintiff's employment ... by leading to future discipline or preventing future advancement. Therefore, these disciplinary actions did not sufficiently alter

Plaintiff's compensation, terms, conditions, or privileges of employment, to constitute an adverse employment action.") (citation omitted).

However, " 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.' " *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir.2000) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999) (en banc)). One court has declined to expand the definition of adverse employment action to include employee reprimands. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997) ("To hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which *might* jeopardize employment in the future. Such expansion is unwarranted.") (emphasis in original) (citation omitted).

▮▮▮ Plaintiff's one-day suspension with pay does not constitute an adverse employment action. Plaintiff has not established that the other discipline she received materially affected her employment. Plaintiff has not demonstrated that any discipline affected future terms of her employment such as salary or her opportunity for promotion. Plaintiff has not demonstrated

that any discipline such as an oral criticism for failure to attend walks-through, to maintain entries in the computer system for tracking leads and customers, and to submit accurate order referrals within three days, an oral warning, or a written warning were more disruptive than a mere inconvenience.

## B. Account Specialist Position

Plaintiff contends that she suffered an adverse employment action because she was pressured to accept a demotion to an Account Specialist position. Defendant argues the Account Specialist position was not a demotion because it resulted in no loss of pay and defendants gave plaintiff the choice to decline or accept the position.

▮▮▮ Plaintiff, as defendants point out, never accepted the Account Specialist position; she remained an Account Executive until terminating her employment. Plaintiff, therefore, never was forced into the Account Specialist position; instead, she chose to remain in her current position. The issue, thus, is whether an offer to accept a position constitutes an adverse employment action.[2]

▮▮▮ Plaintiff has not provided, and independent research has not uncovered, any decisions stating that an offer of a new employment position, providing an employ-

---

**2.** Even if plaintiff chose to work as an Account Specialist, I do not agree necessarily with plaintiff that the position was a demotion. A reassignment without pay or work hour changes ordinarily does not establish an adverse employment action. *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) ("This court has held that reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.") (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987)).

While plaintiff argues the Account Specialist salary was different from her Account Ex-

ecutive salary because she could not earn commission, plaintiff retained her base salary and plaintiff has not demonstrated that the Account Specialist position actually would result in a loss of pay for plaintiff. Plaintiff only argues she would have been restricted in her ability to earn commission, not that her resulting pay would be different.

In fact, the Account Executive pay structure changed to a commission-only compensation plan. (Doc. 37 at 7 n. 1). If plaintiff had been unsuccessful as an Account Executive, her salary could have been exactly the same as or less than the Account Specialist salary.

ee with the choice to accept the new position or remain in a current position, constitutes an adverse employment action. A mere employment offer cannot be a materially adverse change in the terms and conditions of employment where the employee's job has remained unchanged.

### C. Constructive Discharge

Plaintiff claims that all of defendants' actions, taken together, resulted in constructive discharge. Defendants argue that plaintiff was not discharged constructively because she cannot meet the standard for constructive discharge.

■ A plaintiff is constructively discharged where the employer: "1) '... deliberately created intolerable working conditions, as perceived by a reasonable person,' and 2) ... did so 'with the intention of forcing the employee to quit.'" *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir.2001) (citing *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.1999)).[3] The court must examine the employee's objective emotions and the employer's intent. *Id.* (citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). In *Logan, id.*, the Sixth Circuit, quoting from *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000) (alterations omitted), listed the following as factors to consider with regard to the employee's objective emotions:

> "Whether a reasonable person would have feel [sic] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion;

(2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status."

Defendants argue plaintiff cannot show that a reasonable person in her position would have felt forced to terminate her employment and that defendant intended to compel plaintiff to resign. Plaintiff argues that several acts resulted in her constructive discharge: (1) co-workers' stealing of accounts from her; (2) discipline for negative comments; (3) criticism for failure to make entries into a computer system for tracking leads and customers, failure to provide order referrals in a timely manner, and failure to appear at walks-through; (4) pressure to accept a demotion; and (5) insistence that plaintiff vacate her cubicle. Plaintiff contends this conduct made her feel ill, with persistent diarrhea, and compelled her to resign.

■ I conclude that a reasonable person would not find plaintiff's working conditions intolerable, and therefore, plaintiff cannot meet the first prong of constructive discharge analysis. As stated, plaintiff was not forced to accept a demotion. Even if the Account Specialist position could be considered a demotion, plaintiff did not accept the offer and plaintiff never encountered a reduction in salary because

---

**3.** Plaintiff's brief incorrectly states the standard for constructive discharge. Plaintiff states, "To establish a constructive discharge, Plaintiff must establish that working conditions were so unpleasant that a reasonable person in her shoes would have felt compelled to resign." (Doc. 36 at 14 (citing *Crawford v. ITT Consumer Fin. Corp.*, 653

F.Supp. 1184 (S.D.Ohio 1986))). Plaintiff fails to mention the second prong of a constructive discharge analysis—the employer's intent for plaintiff to resign. I will assume, for the purposes of this order, that plaintiff intended to argue both prongs of the constructive discharge analysis in her argument.

she remained in an Account Executive position. Plaintiff also never encountered a reduction in job responsibilities because she remained in an Account Executive position. Because she remained an Account Executive, plaintiff was not reassigned to menial or degrading work or required to work under a younger supervisor.

Plaintiff has not demonstrated badgering, harassment, or humiliation by Buckeye calculated to encourage her resignation. Plaintiff has presented evidence of discipline and the alleged stealing of two accounts, but plaintiff has not shown they were calculated to encourage plaintiff's resignation. In fact, Buckeye's offer of the Account Specialist position demonstrates its desire to retain plaintiff as part of the staff.

Even if plaintiff has shown Buckeye offered her continued employment on terms less favorable than the employee's former status, plaintiff was not required to accept employment on less favorable terms. Plaintiff was not forced to accept an alleged less favorable position because even if the Account Specialist position qualifies as continued employment with less favorable terms, plaintiff did not accept it. Plaintiff, furthermore, has not shown that a reasonable person would find the discipline, vacation of her cubicle, or the alleged stealing of two accounts during a one and a half year period intolerable.

Plaintiff cannot show that a reasonable person would find her working conditions intolerable. Plaintiff, thus, has not established that she was discharged constructively.

Plaintiff has not demonstrated that she suffered adverse employment action through discipline, demotion, or constructive discharge. Defendants' motion for summary judgment shall be, therefore, granted.

**CONCLUSION**

It is, therefore,

**ORDERED THAT**

Defendants' motion for summary judgment be, and hereby is, granted.

**So ordered.**